UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michelle F.,[1] | Case No. 24-cv-2795 (JMB/SGE) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Frank Bisignano, *Commissioner of Social Security*, | |
| Defendant. | |

---

This matter is before the Court on the parties' respective briefing addressing the Commissioner's final decision denying benefits. (*See* Pl.'s Br. (Dkt. 11); Def.'s Br. (Dkt. 13).) Plaintiff Michelle F. ("Ms. F") argues that the Commissioner of Social Security's denial of an application for disability benefits should be reversed because the Agency's Administrative Law Judge ("ALJ") (1) improperly evaluated the medical opinion of Ms. Klein-Hegge and (2) failed to account for all of Ms. F's limitations in the residual functional capacity ("RFC") determination. For the reasons set forth below, the Court concludes that the Commissioner's decision should be upheld.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff, it is by his or her first name and last initial only.

1

I.      **Background**

The Social Security regulations set forth a four-step sequential method of evaluating disability claims. 20 C.F.R. §§ 404.1520(a), 416.920(a). The first step is to determine whether the claimant engages in substantial gainful activity. At the second step, the ALJ determines whether the claimant suffers from a severe impairment—i.e., an impairment that significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claim is denied. If so, at the third step, the ALJ determines whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment meets or equals a listed impairment, then the claim will be granted. If not, at the fourth step, the ALJ determines whether the claimant has an impairment which precludes the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). This includes evaluating the claimant's RFC, which is the claimant's ability to do physical and mental work on a sustained basis despite limitations from any impairments. If the claimant's impairments do not preclude performance of past relevant work, then the claim will be denied. If the claimant's impairments do preclude performance of past relevant work, then at the fifth step, the ALJ determines whether the claimant's impairments prevent the performance of any other work, considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Ms. F applied for Social Security Disability Insurance under Title II of the Social Security Act on October 4, 2021. (R. 243-53.) She also applied for supplemental security income on November 3, 2021. (R. 257-58.) Thes initial applications were denied, as was the request for reconsideration. (R. 130-39, 152-59.) A video hearing was held before an Administrative Law Judge ("ALJ") on May 9, 2023, and the ALJ issued a determination that Ms. F was not disabled on June 21, 2023. (R. 16-44.) Ms. F asked the Appeals Council to review the ALJ's decision, and the Appeals Council declined. (R. 1-6.) Ms. F filed the Complaint in this matter on July 19, 2024. (Compl., Dkt. 1.)

## II.     Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, . . . the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)

(citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The substantial-evidence standard is deferential, and courts should not reverse the Commissioner's findings simply because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Instead, a court should reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Therefore, the law requires that this Court review the ALJ's factual determinations with deference, neither re-weighing the evidence nor reviewing the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

## **ANALYSIS**

Ms. F argues that the ALJ failed to properly evaluate the supportability and consistency of the opinion of her primary psychiatric care provider, Ms. Klein-Hegge, as required by the regulations. Specifically, Ms. F argues that Ms. Klein-Hegge's opinions were not considered in the step four evaluation of Ms. F's residual functional capacity and the ALJ's RFC determination is not supported by substantial evidence.

**I.   ALJ's evaluation of Ms. Klein-Hegge's medical opinion satisfies the regulations.**

Courts reviewing ALJ decisions must read and consider the decision in its entirety. *See, e.g.*, *Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (determining the basis of the ALJ's finding was "apparent from the opinions entirety"). An ALJ is not required to evaluate the medical opinions in any particular section of her opinion *See, e.g.*, *Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010) (ALJ's narrative explanation in different section of decision can support findings throughout the decision). Here, Ms. F argues that the absence of any evaluation of Ms. Klein-Hegge's opinions at Step Four is sufficient to require remand. This argument, however, ignores the ALJ's clear incorporation of her analysis in Step Three into her RFC determination in Step Four. (See R. 36 ("The undersigned has fully considered the medical opinions and prior administrative medical findings in Paragraph 4 above.").) And the ALJ provided several pages of analysis of Ms. Klein-Hegge's opinions of and treatment history with Ms. F. (R. 25-29.)

**A. Regulations require the ALJ to evaluate the supportability and consistency of medical opinions.**

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 416.927(c). The Social Security regulations require the ALJ to explain how persuasive each medical opinion is and to explain the "supportability and consistency" of each opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "ALJs evaluate the persuasiveness of medical opinions by considering [factors including] (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship

that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

The first two factors of supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision. 20 C.F.R. § 404.1520c(b)(2). "The ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). At the same time, although an explanation "need not be exhaustive," "boilerplate or blanket statements will not do." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (cleaned up). An ALJ's failure to explain either supportability or consistency is reversible error. *Id.*

A reviewing court's inquiry is not whether it disagrees with the ALJ's explanation of the supportability and consistency factors based on the record because that would be an improper reweighing of the evidence. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (citing *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Rather, a court reviews only whether the ALJ explained the required factors, and if so—and even if the reviewing court disagrees with the ALJ's explanation—it must find no legal error. *See, e.g.*, *Berry v. Kijakazi*, Case no. 20-cv-0890 (RLW), 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021).

Additionally, an ALJ may "accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). The ALJ is not required to identify each and every scrap of evidence that supports or detracts from the medical opinions, but she must at least set forth reasoning "clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631; *see also Diane M. W. v. Kijakazi*, Case no. 20-cv-2651

(SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."). The regulations require that the ALJ explain how she considered the supportability and consistency factors in evaluating a psychological expert's administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency is a legal error that requires remand); *Michael B. v. Kijakazi*, Case no. 21-cv-1043 (NEB/LIB), 2002 WL 4463901, at *2 (D. Minn. Sept. 26, 2022) (failure to articulate supportability is a legal error that requires remand). The ALJ does not need to use the words "supportability" and "consistency," but "it must be clear" that the ALJ addressed the factors. *Diane M.W.*, 2022 WL 4377731, at *5 (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)). An ALJ's failure to articulate how she considered the supportability and consistency factors is legal error requiring remand. *Susan H. v. Kijakazi*, Case no. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B.*, 2022 WL 4463901, at *2; *Joel M. B. v. Kijakazi*, Case no. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus*, 960 F.3d at 1070).

The regulations define supportability and consistency. Although "supportability" and "consistency" are terms of art, the regulations indicate that the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence;

7

consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2).

### B. ALJ's evaluation of Ms. Klein-Hegge's opinion satisfied regulatory obligations.

Ms. F first argues that the ALJ failed to examine the supportability and consistency of Ms. Klein-Hegge's medical opinion as required by the regulations. Ms. Klein-Hegge determined in August 2022 that Ms. F displayed several limitations to various extents. In August 2022, Ms. Klein-Hegge opined that Ms. F had six extreme limitations, four marked limitations, eight moderate limitations, and five mild limitations. (R. 727-28.) And in May 2023, Ms. Klein-Hegge opined that Ms. F had mild limitations on her ability to understand and remember short, simple instructions and to carry out short, simple instructions; moderate limitations in her ability to understand and remember detailed instructions as well as to carry out detailed instructions; marked limitations in her ability to make judgments on simple work-related decisions, to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (R. 1313-14.)

The ALJ addressed the supportability factor, concluding that Ms. Klein-Hegge's opinion was not persuasive because "DNP Klein-Hegge's records do not support her disabling conclusions," and the "evidence does not support the level of limitation found by [] Klein-Hegge." (R. 27, 29.) The ALJ determined that Ms. F has a mild limitation in understanding, remembering or applying information, citing evidence that she started

8

school to earn an Associate's Degree in Accounting in 2020 and eventually earned the degree in the spring of 2022, and she prepares her own simple meals, pays bills, and follows written instructions "fairly well." (R. 31.) The ALJ also determined that Ms. F has a moderate limitation in interacting with others, citing evidence that she goes outside once or twice a week, isolates from others, has limited interest in arts or activities outside the home, suffers from obsessive thoughts with a perpetual negative outlook, and struggles to get along with others because they stress her out and give her panic attacks. (R. 31-32.) The ALJ determined that Ms. F has a moderate limitation in concentrating, persisting, or maintaining pace, citing evidence that she helps with feeding and letting dogs outside and occasional walks, is not able to process and complete written housework tasks due to anxious or obsessive/distractive thoughts and poor time management, and struggles remembering things because of her depression. (R. 32.) The ALJ determined that Ms. F has a moderate limitation in adapting or managing herself, citing evidence that she infrequently performs light household chores such as cleaning and the majority of her laundry for one or two hours per task every few weeks, chooses self-destructive behaviors rather than comply or compromise with directions, handles stress poorly, and gets overwhelmed very easily and that leads to suicidal tendencies. (R. 32-33.)

The ALJ also addressed the consistency of Ms. Klein-Hegge's opinions with the other record evidence as required by the regulations. *See Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 188-89 (S.D.N.Y. 2002). Although the ALJ's evaluation of the consistency was placed in Step Three of her opinion, that does not make it any less valid. *See Wiese*, 552 F.3d at 733-34 (consistency can be "apparent from the opinion's entirety"). The ALJ

9

recited the limitations that Ms. Klein-Hegge found and examined the evidence on which Ms. Klein-Hegge based those findings, ultimately finding that Ms. Klein-Hegge's opinion was not supported by the evidence. (R. 25-29.) The ALJ then made her own determinations regarding Ms. F's limitations, and in doing so, she identified evidence in the record that supported and was consistent with her determinations.

For example, although Ms. Klein-Hegge opined that Ms. F had either extreme or marked limitations in social interaction (R. 27-28), the ALJ determined that Ms. F had a moderate limitation in interacting with others. (R. 31-32.) In doing so, the ALJ relied on record evidence that Ms. F started work "towards earning her accounting degree in the fall of 2020 and eventually earned her Associate's Degree in Accounting in the spring of 2022" and that Ms. F "can get along with other when she needs to." (R. 31-32.)

Similarly, Ms. Klein-Hegge opined that Ms. F had moderate limitations in understanding and memory. (R. 26.) The ALJ, however, found that Ms. F had mild limitations in understanding, remembering, or applying information. (R. 31). The ALJ noted that Ms. F earned an Associate's Degree in Accounting in the spring of 2022, prepares her own means throughout the week, and "is able to pay bills, handle a savings account, count change, and use a checkbook and money orders." (R. 31.) The ALJ also noted that Ms. F follows written instructions fairly well. (R. 31.)

Ms. Klein-Hegge opined that Ms. F had a marked limitation in her ability to "[c]oncentrate, persist, or maintain pace." (r. 26.) The ALJ, however, determined that Ms. F had only moderate limitation in concentrating, persisting, or maintaining pace. (R. 32.) The ALJ noted that Ms. F "helps with feeding and letting dogs outside and occasional

10

walks" and typically comprehends tasks in written form. (R. 32.) Whereas Ms. Klein-Hegge opined that Ms. F was extremely or moderately limited in adaptation (R. 27), the ALJ determined that Ms. F has a moderate limitation in adapting or managing oneself, noting that she does not respond well to structure or schedule, but she is able to shop for groceries, toiletries, and clothing. (R. 32-33.)

Ultimately, the ALJ determine that Ms. F's statements concerning the intensity, persistence, and limiting effects of her symptoms, which formed the basis for Ms. Klein-Hegge's limitation determinations, were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 36.) In addition to the facts identified above and throughout the ALJ's examination of Ms. F's limitations, the ALJ specifically noted that Ms. F completed a semester of her accounting degree while getting straight A's, worked for six weeks after the alleged date of disability onset, and reported she was working as a high school administrative assistant. (R. 36.)

Ms. F also offers evidence in the record that she argues shows that the ALJ should have found Ms. Klein-Hegge's opinion more persuasive. (*See* Pl. Br. at 14-17.) This argument, though, conflates the substantial evidence and legal error standards and invites this Court to re-weigh the evidence. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) ("We do not re-weigh the evidence presented to the ALJ[.]")). The ALJ explained the supportability and consistency in finding Ms. Klein-Hegge's opinion unpersuasive. Accordingly, Ms. F's identification of evidence that could support a different result cannot alter this Court's finding that the ALJ followed the regulations and did not legally err in evaluating Ms.

Klein-Hegge's opinions because she sufficiently explained supportability and consistency under 20 C.F.R. § 416.920c.

## II. ALJ's RFC assessment is supported by substantial evidence.

In her second argument, Ms. F contends that substantial evidence does not support the ALJ's RFC determination because it failed to incorporate all relevant evidence. It is an ALJ's responsibility to determine a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *E.g.*, *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). In evaluating a claimant's RFC, "consideration should be given to the quality of daily activities . . . and the ability to sustain activities, interests, and relate to others over a period of time . . . and the frequency, appropriateness, and independence of the activities[.]" *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (cleaned up). There is no requirement that an RFC finding "be supported by a specific medical opinion[,]" *Hensley*, 829 F.3d at 932, and the failure to cite to a particular medical opinion from which an RFC came does not indicate that an ALJ inappropriately "played doctor" with the plaintiff's medical evidence. *See Pierce v. Kijakazi*, No. 4:20-cv-1426 CDP, 2022 WL 888141, at *3 (E.D. Mo. Mar. 25, 2022). On review, an ALJ's findings will be upheld if they are supported by substantial evidence. The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not allow courts to reverse the Commissioner's decision. *Page*, 484 F.3d at 1042; *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004).

Ms. F argues only that the ALJ's RFC determination "does not address" medical opinions that found work limitations. Specifically, Ms. F argues that "[e]very medical provider" in the record "identified that [she] experiences episodes of debilitating depression with suicidal ideation, when [she] is unable to leave the house or often even her bed." (Pl. Br. at 18.) The ALJ evaluated the medical evidence of record and agreed with the state-agency consultants that Ms. F's "extreme reports that she is paralyzed by her symptoms, which she described as constant and cognitively disabling, were contradicted by objective test results and by progress notes suggesting improved functioning with certain adjustments in her medications." (R. 35.) This finding is supported by evidence that Ms. F's objective test results and progress notes improved with adjustments in her medication and medical evidence stating that she "functions independently despite her symptoms." (R. 83, 92, 102, 110, 111.) The ALJ also relied on evidence that Ms. F reported school as a motivator and an improvement in her symptoms. (R. 929.)

This Court will not disturb the ALJ's RFC determination unless it falls outside the available "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). The ALJ was presented with several medical opinions that presented conflicting views of the severity of Ms. F's symptoms and reasonably concluded that her allegations of debilitating symptoms were not consistent with her reported activities or the medical record as a whole. As such, the ALJ's decision should be affirmed.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Ms. F's request for relief (Dkt. 11) be **DENIED**;

2. The Commissioner's request for relief (Dkt. 12) be **GRANTED**; and

3. This matter be **DISMISSED**.


Date: July 31, 2025

     _s/Shannon G. Elkins_
     SHANNON G. ELKINS
     United States Magistrate Judge


## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.